NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter.  Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections @ akcourts.us*

## IN THE COURT OF APPEALS OF THE STATE OF ALASKA

YURI BEREZYUK,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12188
Trial Court No. 3PA-14-617 CR

O P I N I O N

No. 2572 — October 20, 2017

Appeal from the Superior Court, Third Judicial District, Palmer,
Kari Kristiansen, Judge.

Appearances:  Glenda Kerry, Law Office of Glenda J. Kerry,
Girdwood, for the Appellant.  Terisia K. Chleborad, Assistant
Attorney General, Office of Criminal Appeals, Anchorage, and
Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before:  Mannheimer, Chief Judge, and Allard, Judge.

Judge ALLARD.

A jury found Yuri Berezyuk guilty of second-degree misconduct involving
a controlled substance (possession of heroin with the intent to distribute) and fourth-
degree misconduct involving a controlled substance (simple possession)[1] after Wasilla

---

[1]    These guilty verdicts merged at sentencing, resulting in a single conviction for second-
(continued...)

police found Berezyuk slumped over the wheel of his brother's car and in possession of 14 grams of heroin and other drug paraphernalia. At trial, the prosecutor sought to introduce evidence of Berezyuk's prior conviction for possession of heroin with intent to distribute (which occurred ten years earlier) as evidence of Berezyuk's intent to distribute the heroin found in the current case. The superior court overruled the defense attorney's objection to this evidence, concluding that evidence of the prior conviction was admissible under *Bingaman v. State* as evidence of a relevant "character trait" that "tends to prove [Berezyuk's] intent [to distribute heroin]."[2]

On appeal, Berezyuk argues that the superior court applied the wrong evidentiary standard and erroneously permitted the prosecutor to use the prior conviction as character evidence at trial. We agree with Berezyuk that the superior court applied the wrong evidentiary standard and that the court failed to conduct the proper analysis under Alaska Evidence Rules 404(b)(1) and 403. We also conclude that the prosecutor's overt use of the prior distribution conviction as character evidence at trial unfairly prejudiced Berezyuk and requires reversal of his conviction for possession of heroin with the intent to distribute (but not his conviction for simple possession).

Berezyuk also raises a second issue on appeal. In addition to the felony drug convictions, Berezyuk was also convicted of various misdemeanors, including giving false information to a peace officer based on his falsely identifying himself as his brother Ivan when he was arrested. Berezyuk challenges this false information conviction, arguing that he was prejudiced by the prosecutor's introduction of evidence

---

[1]    (...continued)
degree misconduct involving a controlled substance.

[2]    *See Bingaman v. State*, 76 P.3d 398 (Alaska App. 2003) (addressing admissibility of evidence of prior domestic violence acts offered as character evidence under Alaska Evidence Rule 404(b)(4)).

relating to two post-arrest encounters with the police in which Berezyuk again falsely claimed to be his brother. For the reasons explained here, we find no merit to this claim.

*Background facts and prior proceedings*

On December 15, 2013, Wasilla Police Department Officer Michael Bonadurer responded to a call for a welfare check after a man was observed slumped over the wheel of a car in Wasilla. When Officer Bonadurer ran the license plate on the car, it came back as registered to Ivan Berezyuk.

Officer Bonadurer approached the vehicle and noticed tin foil and a glass tube in the driver's hands. On the front passenger seat, there was an open sunglasses case with a small baggie containing a brown, tar-like substance that turned out to be heroin.

Officer Bonadurer knocked on the car's window to waken the driver, and he directed the driver to open the door. Instead of opening the car door, the driver "mess[ed]" with the drug paraphernalia on the passenger seat, and then drove away, throwing the sunglasses case out of the window as he fled. A chase ensued and, within a short time, the driver was apprehended.

Initially, the driver identified himself as "Ivan Berezyuk," and he was taken to jail, booked, and released on bail as Ivan Berezyuk. However, fingerprint analysis and a search of DMV records revealed that the driver was actually Ivan's brother, Yuri Berezyuk.

After retracing the route the car had taken during the police chase, the police found the sunglasses case. The case held 14 grams of heroin, valued at approximately $7000. A search of the car also revealed a digital scale and Yuri Berezyuk's cell phone.

The State indicted Berezyuk on one count of second-degree misconduct involving a controlled substance (possessing heroin with intent to distribute)[3] and one count of fourth-degree misconduct involving a controlled substance (knowingly possessing heroin).[4] The State also charged Berezyuk with three misdemeanors: failure to stop at the direction of a peace officer,[5] providing false information concerning identity,[6] and violating conditions of release.[7]

At the beginning of Berezyuk's trial, the prosecutor sought to introduce evidence of Berezyuk's prior conviction for possession of heroin. The prior conviction arose from an incident in 2004 in which Berezyuk and his brother Ivan were arrested for stealing a camera from a kiosk in the Anchorage airport. When the police searched Berezyuk after the arrest, they discovered two bricks of heroin in Berezyuk's jacket, along with lubricating gel and an unopened package of party balloons in Berezyuk's bag. The two bricks of heroin weighed almost 320 grams, and were valued at approximately $250,000. Berezyuk admitted to the police that he was waiting for a phone call so that he could deliver the heroin to a person in Wasilla. Berezyuk also told the police that, in exchange for delivering the heroin, he was supposed to receive three to four grams for his personal use. Based on this evidence, Berezyuk was convicted of second-degree

---

[3]  Former AS 11.71.020(a)(1) (2014).

[4]  Former AS 11.71.040(a)(3)(A)(ii) (2014). Berezyuk was also charged with a second count of fourth-degree misconduct involving a controlled substance for possessing methamphetamine, but this charge was dismissed prior to trial.

[5]  AS 28.35.182(b). Berezyuk does not challenge this conviction on appeal.

[6]  AS 11.56.800(a)(1)(B).

[7]  Former AS 11.56.757(b)(1) (2014). Berezyuk does not challenge this conviction on appeal.

misconduct involving a controlled substance for possessing heroin with intent to distribute.

The prosecutor argued that this prior conviction should be admitted at trial because it was relevant to prove Berezyuk's intent to distribute the heroin found in the current case. Berezyuk's attorney objected and argued that the jury was likely to use the prior conviction for an improper purpose. The superior court overruled the objection.

However, in overruling the defense attorney's objection, the superior court did not directly address whether the evidence was being offered for a non-propensity purpose; nor did the court analyze its admissibility under Evidence Rules 404(a), 404(b)(1), and 403. Instead, the court erroneously applied the test announced by this Court in *Bingaman v. State*, which applies to evidence of prior domestic violence offered as character evidence under Evidence Rule 404(b)(4).[8] After engaging in this erroneous analysis, the court then concluded that the prior conviction was admissible under *Bingaman* because the circumstances of the prior conviction were "sufficiently similar" to the current case and because Berezyuk's prior conviction for distribution of heroin was a relevant "character trait" that "tend[ed] to prove [Berezyuk's] intent [to distribute heroin]" in the current case.

In line with this ruling, the prosecutor then used Berezyuk's prior conviction as character evidence at trial. For example, at the beginning of her closing argument, the prosecutor emphasized that the prior conviction showed that Berezyuk was an "established drug dealer":

> You've got a guy convicted [in] a 2004 case ... for possessing with the intent to distribute a pretty significant amount of heroin by all standards. A quarter of a million dollars worth of heroin is a huge amount. This is an established drug

---

[8]     *Bingaman v. State*, 76 P.3d 398, 415-16 (Alaska App. 2003).

dealer, not rinkydink possession and share some with your buddy and call that distribution. It's a real, live distribution case. He's got balloons, and personal lubricant, and masking agents in his bag at the airport, heroin conviction.

Fast forward to 2014. The police respond and find the same individual [in possession of heroin].

Later in her closing argument, the prosecutor reminded the jury that "[t]he airport case was a huge amount of heroin." She also reminded the jury that the officer who was involved in Berezyuk's prior case had testified that Berezyuk was distributing "$250,000 worth of heroin" and "you have that case as evidence of [Berezyuk's] intent" to distribute the heroin found in the current case.

Lastly, at the very end of her closing argument, the prosecutor argued that it was "laugh[able]" to think that a person convicted of distributing such a large amount of heroin in the past was not also guilty of intending to distribute the heroin found in his possession in this case:

Say the story out loud. Say it out loud to each other. And if you can do it and exonerate Yuri Berezyuk without laughing, then maybe there's a reasonable defense. But there is not a reasonable defense. It just — it doesn't even pass the laugh test that somebody who had the intent to distribute that much drugs in 2004, when he's contacted with this much drugs in 2014, hides them, runs from the police, lies to the police, isn't knee deep in it this time as well.

Following deliberations, the jury found Berezyuk guilty of all charges. This appeal followed.

*The superior court erred in admitting evidence of the prior conviction and allowing it to be used as propensity evidence at trial*

Alaska Evidence Rules 404(a) and 404(b)(1) codify the common-law doctrine that prohibits the admission of evidence of a person's other crimes, wrongs, or acts "if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith." Under Evidence Rules 404(b)(1) and 403, such evidence is admissible only if it is relevant for some other, non-character purpose, and if the trial judge is convinced that this non-character purpose is not outweighed by the risk of unfair prejudice that the jury will use this evidence improperly.[9]

Here, the prosecutor claimed that Berezyuk's prior conviction for distribution of heroin was relevant for the purportedly non-propensity purpose of proving Berezyuk's "intent" to distribute heroin. But simply using one of the words listed in Rule 404(b)(1) does not mean that the evidence is actually relevant for a non-propensity purpose.[10] The prosecutor's explanation of her theory of admissibility made clear that the prosecutor intended to use (and ultimately did use) Berezyuk's prior conviction as character or propensity evidence — *i.e.*, to establish that Berezyuk was a proven drug dealer who had been convicted of distributing large amounts of heroin in the past and who could therefore be expected to have acted in conformity with that prior conduct in the current case.

---

[9] *See Willock v. State*, 400 P.3d 124, 127 (Alaska App. 2017) (explaining these principles).

[10] *Cf. Willock*, 400 P.3d at 127 ("[A] trial judge must not allow a prosecutor (or a defense attorney, for that matter) to simply recite the various permitted purposes listed in Rule 404(b)(1) and to make generalized assertions about how a person's past acts show their 'intent', 'plan', 'knowledge', or 'absence of mistake or accident.'").

The superior court's ruling implicitly recognized the underlying propensity nature of the prosecutor's argument for admissibility of the prior conviction. The court did not identify a non-propensity use of the evidence nor did it analyze the admissibility of the prior conviction under Evidence Rules 404(b)(1) and 403. Instead, the court agreed with the prosecutor that the prior conviction was a relevant "character trait" that "tend[ed] to prove" Berezyuk's "intent" to distribute heroin, and the court analyzed the admissibility of this evidence under the *Bingaman* test — a test designed to assess the admissibility of character evidence under Evidence Rule 404(b)(4).[11]

This was error. Because *Bingaman* is a test for evaluating the admissibility of evidence that is expressly being offered to establish a defendant's character (under a rule that creates an exception to the normal ban on character evidence), the *Bingaman* test is an inappropriate legal framework with which to assess the admissibility of evidence under Rule 404(b)(1) — a rule that expressly *prohibits* character evidence.

We note that the misuse of *Bingaman* in this context is not unique to this case. We have seen other cases where judges have inappropriately used the *Bingaman* test to analyze the admissibility of evidence under Rule 404(b)(1).[12] But those cases typically involved situations where the non-propensity purpose of the evidence was clear, and the judge's announced reliance on *Bingaman* appeared to be an error of nomenclature rather than substance.[13]

---

[11] *Bingaman*, 76 P.3d at 415-16 (Alaska App. 2003).

[12] *See, e.g.*, *Rollins v. State*, 2015 WL 4874789, at *3 (Alaska App. Aug. 12, 2015) (unpublished).

[13] *Id.* (concluding that although the trial court mistakenly referred to the *Bingaman* test, an examination of the trial court's actual analysis of the proffered evidence indicated that the court properly engaged in the correct analysis under Rule 404(b)(1) and Rule 403).

Here, however, the superior court's reliance on *Bingaman* was premised on a fundamental misunderstanding of when evidence of a defendant's character trait is admissible. And the court's error directly led to the prosecutor using the prior conviction as propensity and character evidence at trial.

On appeal, the State argues that there were, in fact, legitimate non-propensity uses for Berezyuk's prior conviction. The State points out specifically that Berezyuk's defense in this case was that the drugs belonged to his brother — and that Berezyuk's prior case also involved Berezyuk's brother. While the State has identified an arguable non-character ground of relevance, the record of Berezyuk's trial clearly reveals that the prosecutor's primary use of this evidence was to urge the jurors to improperly view the evidence as character evidence.

For much the same reason, we conclude that the limiting instruction given in this case was insufficient to cure the trial judge's error. This instruction told the jury that they could only use evidence of Berezyuk's "other conduct" (*i.e.*, his prior conviction) to establish "motive, opportunity, intent, identity, preparation, plan, knowledge, or absence of mistake or accident" — in other words, Evidence Rule 404(b)(1)'s list of potential permitted purposes. But the jury was unlikely to understand the purpose of this instruction, or its importance in Berezyuk's case. The prosecutor overtly asked the jurors to use Berezyuk's prior conviction as propensity evidence. And the court's limiting instruction was a generic list of technical legal terms, devoid of any explanation as to how these concepts might relate to the facts of Berezyuk's case.[14]

---

[14] *See Willock*, 400 P.3d at 127 (noting the difference between the technical legal meaning of the word "intent" as it pertains to Rule 404(b)(1) and the way it is used in "everyday speech").

The State also argues that any error in introducing the prior conviction was harmless because, according to the State, the evidence was overwhelming that Berezyuk possessed the heroin with intent to distribute it.

We agree with the State that the evidence of Berezyuk's *possession* of the heroin was overwhelming. Despite Berezyuk's claim that he was unaware of the contents of the sunglasses case, all of Berezyuk's actions — his "messing" with the drug paraphernalia on the passenger seat when the police officer woke him up, his ensuing flight from the officer, his throwing the sunglasses case out of the car, and his false claim that he was his brother Ivan — pointed to his awareness that the sunglasses case held illegal drugs. We therefore agree with the State that the error was harmless with regard to the charge of simple possession, and we uphold Berezyuk's conviction for fourth-degree misconduct involving a controlled substance.

We come to a different conclusion, however, with regard to the charge of possession with intent to distribute. Precisely because the evidence was so strong that Berezyuk knowingly possessed the heroin, the prosecutor's primary use of Berezyuk's prior conviction was to prove the additional allegation that Berezyuk intended to distribute this heroin.

Although there was evidence of Berezyuk's intent to distribute apart from his prior conviction — for example, the high monetary value of the heroin, and the fact that there was a drug-weighing scale in the car — the prosecutor's closing argument relied heavily on the prior conviction as proof of Berezyuk's intent to distribute the heroin in this case. Given this, we conclude that the trial court's error in admitting this evidence likely had an appreciable effect on the jury's verdict on the second-degree

controlled substance misconduct charge. We therefore conclude that we must reverse that conviction.[15]

*Berezyuk's argument regarding his false information conviction*

In a separate argument, Berezyuk challenges his conviction for giving false information to the police (*i.e.*, for falsely identifying himself as his brother Ivan). Berezyuk argues that this conviction should be reversed because it was error for the trial court to allow the prosecutor to introduce evidence of two other instances where Berezyuk had encounters with the police and falsely identified himself as his brother.

The first incident took place two days after Berezyuk was released on bail in the present case: Berezyuk went to the impound lot where his brother's car had been towed, and he claimed that he was his brother in an attempt to get his brother's car out of the lot. The second incident occurred a few days later, when Berezyuk was stopped for reckless driving, and he again claimed to be his brother.

The trial judge prohibited the prosecutor from introducing the reason for the traffic stop, but the court otherwise permitted the prosecutor to introduce this evidence that Berezyuk had falsely identified himself as his brother Ivan.

On appeal, Berezyuk argues that there was no legitimate non-propensity use for this evidence. But even if we were to assume this is true, any error was clearly harmless. The evidence was overwhelming that Berezyuk falsely identified himself to the police, and Berezyuk's attorney offered no real defense to this charge.

---

[15] *See Love v. State*, 457 P.2d 622, 634 (Alaska 1969).

*Conclusion*

Berezyuk's conviction for second-degree controlled substance misconduct is REVERSED.  His other convictions, including his conviction for fourth-degree controlled substance misconduct, are AFFIRMED.  This case is REMANDED to the superior court for further proceedings consistent with this decision.